STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, V. NELIGH STATE BANK, APPELLEE: A. J. SHOLZ ET AL., APPELLANTS.

FILED MAY 11, 1928. No. 25354.

C. H. *Hendrickson,* J. A. *Donohoe* and A. R. *Davis,* for appellants.

C. M. *Skiles, Fred S. Berry, James E. Brittain* and *Lyle E. Jackson, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and HOWELL, JJ., and REDICK, District Judge.

DEAN, J.

September 16, 1925, the Neligh State Bank, then insolvent, was taken over by the department of trade and commerce. A few days thereafter the district court for Antelope county appointed R. W. Ley as receiver. The bank maintains that for a time, and while it was yet a going concern, it was the owner of the fee title to the S. ½ of the N. E. ¼ and the S. E. ¼ of section 22, and the N. ½ of the N. E. ¼ of section 27, consisting of 320 acres of land, all in township 24, range 8, west of the sixth p. m., in Antelope county, subject, however, to a $10,000 mortgage loan.

In this suit A. J. Sholz and Martha H. Sholz, his wife, and B. A. Hoskinson were joined as defendants. From the pleadings and the proofs it appears that Sholz caused an instrument to be filed in the county clerk's office of Antelope county, January 28, 1926, which purports to show that he, or his wife as his assignee, had some right, title or interest in the land in suit, and that, pursuant to such alleged interest, it is maintained by the defendants that they entered into a verbal lease with the defendant Hoskinson and placed him in possession of the land. And Hoskinson was in possession when this suit was commenced.

March 2, 1926, the receiver began this suit in the district court for Antelope county. In his petition he maintained that he was entitled to have an order entered herein requiring "A. J. Sholz, Martha H. Sholz, and B. A. Hoskin-

son, and each of them, to appear before Honorable Anson A. Welch, one of the judges of the district court for Antelope county, Nebraska, sitting in chambers at Wayne, Wayne county," March 6, 1926, on an hour named, "to show cause, if any there be, why an order should not be entered herein, requiring the aforesaid parties, and each of them, to surrender possession of said real estate to your petitioner."

Pursuant to notice the parties appeared and upon submission of the evidence the court found for the plaintiff receiver and against the defendants Sholz and Hoskinson. The defendants have appealed.

The record discloses that the receiver, some time before January 28, 1926, under the court's approval and direction, entered into an agreement for the sale of the land in suit to a man named Avery, for a consideration certain and upon terms approved by the court, and that under this agreement Avery, besides the purchase price, assumed payment of the $10,000 mortgage and entered upon possession of the land. The record shows that the defendant Sholz, as a part of his plan to embarrass the petitioner, placed the defendant B. A. Hoskinson in possession of the land under a verbal lease.

Fred Nuttleman, a former tenant, testified on the part of the plaintiff that he resided on the land in suit during the year 1925. His lease is in the record and will presently be noted. His rental began in September, 1925, and ended March 1, 1926. On the cross-examination Nuttleman testified: "By the court: Q. You say you assigned that lease to Hoskinson? A. Yes. By the court: Q. When did you do that? A. I don't know. By the court: Q. Well, as near as you can tell? (No answer.) Q. Did you ever talk with the receiver of the bank or anybody about assigning it to Hoskinson? A. Not at that time. I talked with Mr. Saunders in the past month, but I have no dates. Q. You had no talk with anybody before you made this arrangement with Hoskinson? A. No. sir. By the court: Q. You say this lease for next year is on the same terms as

the written lease you had before? A. Yes; that was supposed to go just the same. By the court: Q. And in this written lease you agree not to assign the lease or assign the premises without written consent, so by what authority did you turn it over to Hoskinson? A. Well, I have no lease. By the court: Q. You hadn't any written authority from anybody to turn it over to Hoskinson? A. No; not from the bank. By the court: Q. Or anybody else? A. No sir."

The Nuttleman lease above referred to is in the usual form and, among others, contains this recital:

"And said second party (Nuttleman) agrees not to assign this lease nor underlet said premises without the written consent of the first party (Neligh State Bank)."

The argument of plaintiff's counsel is that the unauthorized, wrongful, and unlawful possession of the land by Hoskinson, as Sholz' alleged subtenant, will result in the repudiation and rescinding of the contract of sale made by the receiver with Avery, unless the relief prayed for by plaintiff should be granted, namely, that all of the above named parties defendant be required to surrender possession of the premises so unlawfully obtained.

The defendants argue that the court was without jurisdiction to adjudicate this case at chambers in Wayne county, Nebraska. We do not think the argument is sound in view of the following act:

"In any proceeding in connection with the insolvency, liquidation or reorganization of a bank, a judge of the district court shall have jurisdiction in any county in the judicial district for which he was elected to perform any official act in the manner and with the same effect as he might in the county in which the matter arose, or to which it may have been transferred, and he may perform any such act in chambers with the same effect as in open court." Laws 1925, ch. 30, sec. 16.

The possession by Hoskinson was subsequent to the court's appointment of the receiver Ley and was without the color of right or legal authority from the fact that dur-

ing all of the time mentioned herein the receiver, under the direction of the court, was lawfully entitled to the possession of the land, which at the time was in the course of administration by the court.

"The appointment of a receiver pending the litigation does not in any way determine the rights of the parties to the litigation. He is but the arm of the court to take care of and administer the property placed under his charge as receiver as the court may from time to time direct. Property in his hands is in *custodia legis* and the court in the event that it determines that it had no jurisdiction to appoint the receiver still has jurisdiction to restore the property to the owner or person having the legal title to it. He is a person indifferent as between the parties to the litigation and holding the property for the benefit of all of them, but his possession is really that of the court." 1 Tardy's Smith on Receivers, (2d ed.) sec. 26.

The learned trial court rightly held that the Neligh State Bank was entitled to and should have the immediate possession of the real estate without interference by Hoskinson or other of the defendants. The judgment is, therefore, in all things

AFFIRMED.